986 F.2d 1422
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
TOLEDO (5) AUTO/TRUCK PLAZA, INC., Respondent,
Teamsters, Chauffeurs, Warehousemen and Helpers Union Local
No. 20, Intervenor.
 No. 92-5305.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1993.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 The National Labor Relations Board petitions for enforcement of its decision and order, finding that respondent Toledo 5 Auto/Truck Plaza, Inc., engaged in unfair labor practices in violation of 29 U.S.C. §§ 158(a)(1) and (3). We conclude that the findings of the Board were reasonable and supported by substantial evidence, and we shall, therefore, enforce the order.
 
 I.
 
 2
 Respondent Toledo 5 operates an auto/truck plaza adjacent to the Ohio Turnpike in Stoney Ridge, Ohio. The plaza includes a fuel service station, restaurant, and general store. Toledo 5's restaurant employees are represented by the Hotel Employees and Restaurant Employees Union, Local 84, while the motor vehicle and fueling employees are represented by the Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local 20. On June 24, 1986, Teamsters employees began an economic strike against Toledo 5 after their collective bargaining agreement expired. The Hotel Employees' collective bargaining agreement, which prohibited its members from striking, remained in effect.
 
 
 3
 When the Teamsters went on strike, Toledo 5 hired guards who photographed and videotaped the picket lines. Toledo 5 claimed that the surveillance activities were aimed at "anybody that was out there" to secure evidence, if necessary, for an injunctive suit. Toledo 5 never instituted any legal proceedings concerning the strike or concerning any misconduct on the part of the picketers.
 
 
 4
 On several occasions during June 1986, Shelly Tate Shields, a Toledo 5 restaurant employee who was on maternity leave, visited her fiance, Steven Shields, at the Teamsters picket line while Steven Shields, also a striking Toledo 5 employee, was participating in picket line activities. On June 9, during one of Ms. Shield's visits, she held a sign and participated in the picketing for a striker who left the line briefly to use a restroom. Ms. Shields's "substitute" picketing activities were photographed and tape-recorded by Toledo 5.
 
 
 5
 After her baby was born in August, Ms. Shields telephoned Toledo 5's owner, Mel Berman, to tell him she would soon return to work. Berman asked if she had participated in the Teamsters' strike. When she said that she had, he informed her that she was terminated because she violated the Hotel Employees' contract that contained a no-strike provision. He later stated that he had photographs and videotape of Ms. Shields participating in the picket and that it did not matter that she was on maternity leave at the time.
 
 
 6
 The Board found that the Hotel Employees' collective bargaining agreement did not waive Shelly Shield's right to participate in the Teamsters' strike while she was on maternity leave. As a result, the Board concluded, Toledo 5 committed an unfair labor practice by discriminatorily discharging Shields for her lawful picketing, a violation of 29 U.S.C. §§ 158(a)(1) and (3).[1] The Board ordered Toledo 5 to offer Ms. Shields immediate and full reinstatement and to make her whole for any loss of earnings and benefits she incurred because of the unlawful discharge. The Board also concluded that Toledo 5's videotaped surveillance of the strike was an unfair labor practice in violation of 29 U.S.C. § 158(a)(1).
 
 
 7
 During the Teamsters' strike, Toledo 5 hired permanent replacements to take the positions formerly held by the striking employees. On July 15, 1986, when the strike was over, a Teamsters' representative notified Toledo 5 that the striking employees were offering, without condition, to return to work. Because Toledo 5 had replaced the striking employees during the strike, it could not immediately reinstate them. On September 8, 1986, the Teamsters sent a letter asserting that permanently-replaced strikers were entitled to preferential hiring status when positions became available.
 
 
 8
 The following summer, Toledo 5 sent recall notices to two former strikers, Barbara Smith and Cindy Hollie, but terminated both employees when they did not timely respond to the recall notices. The Board found, however, that the recall notices were invalid because they gave the two employees an "unreasonably short time in which to report to work...." Toledo 5 also terminated the recall rights of Jill Czerniejewski and Debbie Sleek on the basis that they had found "substantially equivalent employment." Toledo 5 claimed that an additional reason for refusing to reinstate Czerniejewski was her possible involvement in criminal activities concerning "something about checks." The Board determined that neither Ms. Czerniejewski nor Ms. Sleek had, in fact, received substantially equivalent employment, and that Toledo 5's claim that it terminated Ms. Czierniejewski's recall rights because of possible criminal involvement was mere pretext and not a substantial or legitimate reason for terminating those rights.
 
 
 9
 On the basis of these findings, the Board concluded that Toledo 5 violated sections 158(a)(1) and (3) by terminating the reinstatement rights of former striking employees Smith, Hollie, Czerniejewski, and Sleek. The Board ordered Toledo 5 to rescind its termination of striker recall rights and to make Smith, Hollie, Czerniejewski, and Sleek whole. The order also required Toledo 5 to expunge from its files any reference to the termination of recall rights and to post copies of a remedial notice. The Board now seeks enforcement of its order.
 
 II.
 
 10
 The National Labor-Management Relations Act establishes the relevant standard of review for reviewing the Board's findings of fact: "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). " 'Evidence is considered substantial if it is adequate, in a reasonable mind, to uphold the decision.' " Adair Standish Corp. v. NLRB, 912 F.2d 854, 859 (6th Cir.1990) (citation omitted). Moreover, "[t]he Board has the primary responsibility for applying 'the general provisions of the Act to the complexities of industrial life,' " Pattern Makers' League v. NLRB, 473 U.S. 95, 114 (1985) (citation omitted), and a reviewing court should defer to the Board's expertise in this area. NLRB v. Seligman & Assoc., Inc., 808 F.2d 1155, 1161 (6th Cir.1986), cert. denied, 484 U.S. 1026 (1988). The Board's reasonable inferences or conclusions drawn from the facts must be upheld even if "the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88 (1951).
 
 III.
 
 11
 After careful assessment of the record, we are satisfied that the Board's carefully detailed findings are supported by substantial evidence and its conclusions of law are correct. Furthermore, the Board's remedial order is reasonably drawn from the facts. Because we conclude that no jurisprudential purpose would be served by the preparation of a lengthy opinion reiterating the Board's evidence-supported findings of fact and correct conclusions of law, we ADOPT the Board's findings and conclusions as our own, AFFIRM the Board's order, and GRANT enforcement of its petition.
 
 
 
 [1]
 Section 158(a)(1) of the NLRMA provides:
 (a) It shall be an unfair labor practice for an employer--
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.
 29 U.S.C. § 158(a)(1). Section 157 guarantees employees "the right to self-organization, to form, join, or assist labor organizations, or bargain collectively ..., and to engage in other concerted activities...." 29 U.S.C. § 157.
 Section 158(a)(3) prohibits "discrimination in regard to hire or tenure of employment ... to encourage or discourage membership in any labor organization...." 29 U.S.C. § 158(a)(3).